Good morning, Your Honor. Initially, I'd say that the best I can figure out to do with time is to... I'd like to spend ten minutes making... Excuse me. I take it you are Mr. Besser? I'm sorry. I am. I'm sorry. Robert Besser for... Very well. Thank you. ...Appellants and Appellees, depending on which we're talking about. So I would say I would use now ten minutes to make a couple of quick points. And then I'd like to reserve ten minutes for rebuttal or reply, whatever it's called, depending on the... Sure. Go for it. Your time. Go for it. Thank you. There are basically two appeals that my clients made, one from the judgment below and one from the order of attorneys' fees. Addressing first the judgment below, I would like to hit briefly on the statute of limitations argument that we believe is certainly central to Mr. Willis' ability to recover additional portions of the compositions at issue. And by that I mean Judge Moskowitz ruled early on in the case that Mr. Willis was entitled to recapture whatever his portion was of the compositions. And then he took a look and said, well, there is no agreement among the authors. There are three authors of record. But he recognized there was a dispute as to whether one of the authors, my client, Mr. Bellalo, had contributed sufficient amounts to the compositions. So he said, all right, where there are three authors, the presumption is, and we will divide it a third, a third, and a third on recapture so Mr. Willis would get one-third of the composition, one-third interest in the copyright to the composition. If there are only two authors, then Mr. Willis would get a half. And now we're going to have to decide whether there were one or two authors, or excuse me, two or three authors of all the 24 compositions at issue. And that became the major portion of the trial and of the case. From the day that Judge Moskowitz had rendered his opinion on recapture throughout the end of the trial, certainly was the bulk of this case below. And we raised, among other defenses to Mr. Willis's claim, we raised the issue of the statute of limitations. Now, under the Ninth Circuit standard for statute of limitations, the statute begins running an ownership dispute on express repudiation communicated to the claimant. It's my position that we more than fulfilled an express repudiation communicated to the claimant in a number of ways that we've listed in the brief. I'll go through those very briefly. Well, counsel, help us out to figure out to what extent are we dealing with a legal issue or a factual issue? The jury had all of this evidence in front of it. Correct, Your Honor. But we believe the jury never should have considered it that legally, given the uncontradicted facts, we were entitled to a ruling that the statute of limitations barred Mr. Willis's claim to more than a third of the compositions. And based on what theory? Based upon the theory of express repudiation communicated to Mr. Willis, based upon the uncontradicted facts, which I'll go through right now, if you'll allow me to. They are, what happened is, just to back up for a second, Mr. Willis was hired to perform certain services with regard to each of the compositions. After he performed his services on each composition, he then signed the very first document, which was the adaptation agreements, that specifically said he was being paid a percentage to either translate the French lyrics into English lyrics or add new lyrics to a preexisting foreign work. It defined it as a foreign work. So he was told right at the beginning that his services were in connection with a preexisting foreign work. We then went through a series of events over the next 10 or 12 years that are not in dispute. For example, the record albums that were released said that there were three, on the inside, if you remember the old vinyl, which no one sees anymore, but on the inside, on the labels, on all the vinyl, they listed three writers for each of the songs at issue, and those three writers were Mr. Bellello, Mr. Willis, and Mr. Morali. Mr. Willis freely admitted at trial that he had seen those at the time. Then there were a series of lawyers who did investigations for Mr. Willis, and we've outlined all that in the brief. They asked for complete records as to accountings, to his royalties, to his contracts, all of that. And we believe Mr. Willis is charged with either what his lawyers knew, actually knew, or should have known. More importantly, maybe the copyright certificates for each one of these compositions, which was registered, filed with the Copyright Office, all listed Mr. Bellello. On the copyright certificates, is there any evidence in the record that Willis ever saw these certificates? No. More than any of his lawyers did? No. There's no evidence, but we urge that a lawyer doing an investigation of Mr. Willis' standards, you know, contracts and his standing, his accounting, certainly should have looked at the copyright certificates if there was any question about who wrote these songs. And Mr. Willis should have known there was at least a question when he knew there were three authors. But, counsel, I want to make sure the argument you're making now should have, isn't that a factual question that the jury rejected? Ultimately, the jury did reject it on, yes, it did reject it, but we're saying it never should have gone to the jury. And I would like to mention one other point, which is the standard that the Ninth Circuit has set for express repudiation under the Muhammad v. Lee case, which I think is the closest in facts to the case we have here. And under that case, the court laid out, established that express repudiation was established as a matter of law by the simple listing in the credits to the film of the plaintiff's contribution as being a technical consultant, what they called the below-the-line listing. And they said that was sufficient to constitute an express repudiation. Well, what is important to note about that case is that Mr., or the plaintiff, had attended a meeting before the film was released in which he said, according to the court, which he raised the issue of whether or not he was an author. And he had been told, we'll deal with that later. But there, at least the film company knew that he was making that claim. Mr. Willis never made the claim here. So when you talk about the need to expressly repudiate a claim, what can you do other than what was done here, which at every single point that Mr. Bellello or Can't Stop or Scorpio were asked who the authors were and what they contributed, they said it was three, Mr. Willis, Mr. Bellello, and Mr. Morales. And then finally you get the business of Mr. Willis admitting that quarter after quarter after quarter for many, many years he received his BMI statements, which Mr. Bellello testified, described the splits, 50% to Mr. Morales for the music, 25% to Mr. Willis for his lyrics, and 25% to Mr. Bellello for his lyrics. Counsel, are the BMI statements in the record in this case? No, they're not. They're not. The actual statements are not. But Mr. Willis depends upon BMI, the information from BMI, to say the statute of limitations began running three years before he filed the action, and it was a simple request by his attorney to BMI questioning the BMI statements that resulted in Mr. Levy's letter, which is in evidence, explaining why the statements were. But this request was made in 19, you know, 30 years later, 30, 35 years later. And Mr. Willis testified, oh, yes, I got all my statements, but I chose not to look at them. I just took the check and cashed the check. At some point he has an obligation, I submit, to at least read what he's presented with. The only way he can claim ignorance of the running of his claim here is that he simply chose not to read anything. Now, also, very briefly, while I still have a little bit of time and I see him running out, I'd like to go to the legal fees issue for just a moment. Judge Moskowitz below found that Mr. Willis had prevailed to a substantial, such a substantial degree that's one of the factors he applied under Fogarty. And it's my contention that he may have prevailed on the ability to recapture, which was a small percentage of the case. It was the first decision made. That was a unique question, which I believe we had a right to bring. But that being the case, he did not prevail in any kind of overwhelming sense on what was the 80 or 90 percent of the case, which was who gets what out of the songs. And the way, imagine for a second, if we had prevailed on 24 out of 24 songs and it was determined that Mr. Willis only got a third, which is really the question that went to the jury, did he get a third or a half? If we had prevailed on all 24, there would be no question that we were the prevailing party in the bulk of the trial. As it turned out, he prevailed on 13, we prevailed on 11.  It's virtually a draw. To say there was an overwhelming victory here by Mr. Willis is just not accurate. Because after, and finally, Judge Moskowitz talks about the other purpose of the Copyright Act is to encourage authors to assert their rights. And I would point out that once Judge Moskowitz decided that this was a proper case where he had recaptured, Mr. Willis then filed the counterclaim bringing in Mr. Belalo for the first time as a party, and it became a fight between two authors. So to say one author prevailed, yes. Counsel, are you familiar with the Kurt Sang versus John Wiley and Sons Supreme Court case recently? Yes, yes. Does that have any relevance to your argument? Well, in Kurt Sang, I believe they were talking about whether reasonableness alone could be the sole factor which they were afraid that the Second Circuit had applied. There are a series of factors. Reasonableness is one of them. I think under the more recent case of Sal Sol in this circuit, there's no question but that our position was reasonable, where the Court talked about simply going to the jury is sufficient to be reasonable. I mean, shouldn't we at a minimum Well, then what's our standard of review here in terms of the allocation of attorney's fees? It's abusive discretion by the Court, the same thing that you applied in the Sal Sol case. It's abusive discretion. Are you relying on a particular Fogarty factor that was not given significant consideration? I'm saying that as a matter of law, he overstated the Fogarty factor prevailing on the merits and that all of the other Fogarty factors are in our favor, or at least they're tied. It would seem to me, counsel, a good argument for your side would be in light of the recent Supreme Court case in Kurt Sang that the district court was not aware of that case at the time, didn't exist, and so we should send it back for that reason alone. I'll adopt that argument, Your Honor. That is a reasonable argument. They also could not have been aware of the Sal Sol case, which is one I happened to argue in front of the Court, so I was more familiar with that. Well, there you go. So I would think at a minimum you'd want to say that, and you have all the other reasons, but you started there. Yes, on attorney's fees, yes, at a minimum, certainly. Do you want to reserve the rest of your time? Yes, I do, Your Honor. Thank you. And before we start the clock, Ms. Lopez, if you could just at the beginning,  Yes, Your Honor. Good morning, Your Honors. Brian Kaplan for the appellee. Victor Willis. I'm going to be addressing the issues raised in the appeal, not the cross appeal or the third part of the argument. I'm going to start off with the standing issue. Section 203 of the Copyright Act expressly provides that in order to effectuate termination of a grant of copyright, a majority of the grantors on a grant must execute the notice of termination, where only one grantor signs a grant, he or she has standing to terminate that grant. It is not necessary that a majority of authors on a co-authored work execute a notice of termination, as the appellants have suggested. In our case, Mr. Willis alone signed seven adaptation agreements. He was the sole grantor. He had the absolute right to terminate the grants at issue. The court below correctly found that Mr. Willis had standing to terminate. Turning for a moment to the legislative intent of the copyright termination statute, Congress enacted the copyright termination provisions to redress the unequal bargaining position between young and inexperienced creators such as Mr. Willis and the parties to whom they provided a grant of rights at a time when the value of their work was unknown. Under the Act, the grantor is to receive back the rights in the United States with respect to what he or she created. Mr. Bololo at trial admitted having no role in writing the music or the lyrics to the 24 songs at issue. The jury determined that Mr. Willis, as the sole author of the lyrics to YMCA and 12 other disputed compositions, was entitled to a 50 percent interest in each of those compositions. The jury found that Mr. Bololo was not an author of the words or music to these 13 songs, even though he had been taking credit and receiving income from these songs since 1978 or 1980. Mr. Bololo's claim was rejected in the Supreme Court in 1979. Turning to the issue of the statute of limitations, which was a central issue throughout the case, and the issue was when Mr. Willis reasonably knew his claim accrued. Repudiation of a claim to authorship under the Copyright Act is a question of fact. It was submitted to the jury. The jury determined that Mr. Willis filed his claim in a timely manner. In our case, the question was not when Mr. Willis learned that Mr. Bololo was claiming to be a co-author of the compositions, but when Mr. Willis learned that Mr. Bololo was claiming to be a co-author of the lyrics to the songs at issue since Mr. Willis claimed to be and was the sole lyricist of those songs. Accrual of Mr. Willis's claim did not take place when the albums were released containing the songs at issue in 1978 and 79, because none of those albums reflected that Mr. Bololo was claiming to be a lyricist. Similarly, the copyright registrations did not put Mr. Willis on notice either, and even Mr. Bololo during trial, a sophisticated businessman such as he, admitted that he had not reviewed the copyright registrations that were filed by his attorneys in 1978 or 79. Neither did the... What about Mr. Besser's argument that Mr. Willis had an obligation to read these copyright filings? Most, if not all, of the filings did not concern, describe that he had an obligation to read the copyright registrations that were filed by his attorneys. The only other thing that was concerned was that Mr. Bololo was a co-lyricist. It just said he was a co-writer. So many of them would not have put Mr. Willis on notice of anything, and since Mr. Willis had signed contracts, the adaptation agreements, and there is no implied knowledge as a result of the copyright registrations that he never looked at, similar to Mr. Bololo not having seen them. Also, the purported letters that were sent to Mr. Willis's counsel in the 1980s, there is no evidence in the record that either Mr. Willis's attorneys ever received them or that any communications had been passed on to Mr. Willis concerning what was in those letters, and I would submit even if you looked at those letters, they don't, wouldn't start the clock ticking on repudiation because they don't define what Mr. Bololo was claiming. It wasn't until 2009 that accrual took place. In August of 2009, Mr. Bololo's counsel wrote a letter to me for the first time claiming that Mr. Bololo wrote French lyrics that were adapted into English. And it's in the record, I believe at page 781, 780 through 782 is the letter. And in that letter, I'm quoting, the accusations contained in your July 2009 letter to Gary Roth, Assistant General Counsel of BMI, indicate that you do not have all the facts at your disposal. Specifically, the four musical compositions mentioned in your letter, Macho Man, YMCA, In the Navy and Go West, were originally written in French by Jacques Morali and Henri Bololo, the music composer and lyricist respectively. This document was in front of the jury. This is the document that the jury believed started the clock ticking. This is the document that the jury believed put Mr. Willis on notice of the claim, and the claim was brought within three years of the receipt of that letter. I do not believe it should be the province of this Court to overturn the jury's determination on a question of fact such as this. Most importantly, in deciding the issue of the statute of limitations, the issue was charged to consider when, in quote, plaintiffs and or Mr. Bololo plainly and expressly repudiated Mr. Willis's claim that he was one of only two authors because Mr. Bololo did not contribute to the writing of the lyrics of the disputed works. That's key. That means that counsel for Mr. Bololo and the plaintiffs agreed to a jury charge on the issue of repudiation that brought in the concept of being a co-lyricist. They can't agree to that jury charge. They didn't object to the jury charge. That's exactly how it went in. They can't object to the jury charge, not object to the jury charge, and now come in front of you and say it should be something other than that because the jury then determined when Mr. Willis was put on notice of the claim that Mr. Bololo was the co-lyricist, not when Mr. Willis was put on the claim, put on notice of the claim that Mr. Bololo was a quote, unquote, co-author. Based upon the factual evidence, the jury found that Mr. Willis's action was timely filed and such findings should not be disturbed. Turning to a moment on the issue of latches, the lower court, in light of the Supreme Court decision in Petrella, correctly found that latches did not bar Mr. Willis's claim. Moreover, appellants did not demonstrate any prejudice below. Lastly, copyright termination under Section 203, which takes place 35 years after a grant was made, will, by its very nature, involve factual issues from prior generations where witnesses will have passed and proof issues will be created by the passage of time. So I believe that a latches argument, when it comes to the memory or people having passed away, you're going to have that in many cases where you have copyright termination issues. Turning to the question of attorneys' fees, the court below correctly granted appellees $527,000 in attorneys' fees. We respectfully submit that the court below did not abuse its discretion in making that award. An award of attorneys' fees does not constitute an abuse of discretion unless it is based on an inaccurate view of the case. The Supreme Court, in light of the Supreme Court decision in Petrella, correctly found that latches did not bar Mr. Willis's claim. Moreover, appellants did not demonstrate   unreasonableness by the appellants. This Court can still uphold the decision under the     Kurtzang rationale. And second, we believe that the court below actually erred, though, when applying the reasonableness prong, because we believe that many things that were done by the plaintiff appellants in this case were objectively unreasonable. It was objectively unreasonable to say that our client didn't have standing and there was motion practice relating to that. We succeeded on three, defending three motions, one to dismiss and two for summary judgment. They initially said that our client was a worker for hire, and that was ultimately withdrawn by the other side. And we succeeded in convincing a jury that despite the fact that Mr. Bellolo was claiming co-authorship on 13 songs going back to 1978 and reaping millions of dollars in the process, that that had been a falsehood for all those years. So we believe that if you look at the totality of the circumstances of reasonableness, there was no reasonableness by their conduct. I think that district court judges, if they have to weigh other factors and they can come to the conclusion that attorney's fees are warranted, would rather stay away from saying that somebody was unreasonable in the process, and we believe that that's what our judge did below. But we think that when you look at his decision, that his decision stands the test of Kurtzang. He found that Willis was the prevailing party in the action, that he achieved a high degree of success in the litigation, that Willis defeated plaintiff's claim that he could not unilaterally terminate the grants under 17 U.S.C. Section 203. He prevailed on a series of summary judgment motions, and at trial he prevailed on 13 of the 24 songs. And most importantly on the deterrence issue, he said that Willis is an author who incurred significant attorney's fees in trying to get back what he transferred to plaintiff's parties with superior bargaining power decades ago. An award of attorney's fees is justified to encourage authors like Willis to assert their rights, to regain their copyright interests, and to deter production companies and other transferees of copyright from attempting to interfere with those rights. All right. Thank you, counsel. We've got your argument. Thank you. All right. So counsel, again, just even right when you start the clock, just remind us which issues you're covering. Okay. Good morning. May it please the panel. My name is John Jasnok. I'll be quickly arguing Mr. Willis's cross appeal, which deals with two narrow issues. First, the denial of our Rule 50 motion for judgment as a matter of law, and our Rule 50B renewed motion for judgment as a matter of law. This motion is based on Mr. Bilello's testimony and admissions that he provided no English lyrics to the subject compositions and had no part whatsoever in the creation of music. And as a result, Mr. Bilello is not a subject of the compositions as a matter of law. The second issue of the cross appeal is the denial of our request for relief under the declaratory judgment act for the disgorgement of improperly obtained writer's royalties from the 13 compositions that the jury did find that Mr. Bilello had falsely claimed authorship and had filed copyright registration. So I have a question with respect to that latter point, the Rule 59E motion. Was that made during the proceedings or was that made after the verdicts were rendered? Well, we made a Rule 50A motion prior to the case going to the jury and then a Rule 50B motion post-trial. Well, I'm talking about the motion to amend the judgment to order accounting and disgorgement. Am I misunderstanding your point? No, no. That's correct, Your Honor. Well, my question is, in effect, was your motion timely made? It seems to me that it wasn't even made until long after the final verdict was rendered. No, Your Honor. We made an initial motion for a judgment of matter of law orally prior to the case going to the jury and then renewed the motion after the verdict. Okay. I'm not talking about the JMOL. I'm talking about the motion to amend the judgment to order accounting and disgorgement, which was, I gather, your second point? That was made post-trial, Your Honor. Okay. Isn't that fatal? No, Your Honor, because we had made the request prior to the judgment being issued in our proposed judgment and we had asked for it prior to the verdict as well. All right. So quickly, going to the rule, the denial of the motions as to the 11 compositions, even taking them at their word that there were these preexisting French works, Mr. Bolello admits he did not write the lyrics to the U.S. versions and did not write the music. Under black letter law, if lyricist A collaborates with the musician and then the musician takes that music and collaborates with musician B for a second composition, U.S. copyright laws only protect lyricist B and the musician for that second composition. That's the holding in the Second Circuit's Shapiro-Bernstein versus Jerry Vogel decision. That's consistent with Nimmer on copyrights. Squares with this court's Ashton Tate decision. And they do not even challenge or attempt to distinguish these cases. And as to the request for declaratory judgment, by denying this request, the district court abused its discretion because it allowed Mr. Bolello to retain ill-gotten gains for the false claims of authorship and false copyright registrations. Now, this request is limited in scope for the three years prior to the institution of the action, but they would still be retaining the, you know, upwards of 25 years of improperly obtained writer's royalties. And with that, I urge the panel to reverse the court's denial of our Rule 50 motions as to the 11 compositions and reverse the denial of our request for disgorgement of the improperly obtained writer's royalties. And I thank the panel for its time. Thank you, counsel. Thank you. Please, Mr. Court, your honors, good morning. I'm Karen Willis. I'm going to be arguing the issues of Rooker Feldman with respect to the motion to vacate in the district court. I actually alleged in the motion to vacate that attorneys Michael Moore and Jason Rodenboe engaged in a scheme to mislead the court in its decisions to enter a default judgment in Moore and Rodenboe's personal capacity. However, the attorney's fees agreement, your honors, was actually with their respective law corporations, not Moore and Rodenboe personally. So, your honors, the district court erroneously concluded that I actually alleged that the state court had erred or did not have jurisdiction. However, your honors, nowhere in the motion to vacate did I argue such a thing. To the contrary, the state court had no choice but to rule as it did, considering that Moore and Rodenboe misled the court. So, I actually argued that Moore and Rodenboe lacked standing to bring their actual case, and had they notified the state court of this as officers of the court, as they were obliged to do so as members of the state bar, it may have resulted in the state court issuing an order to show cause as to why it should not be dismissed since they did not have standing. And also, your honors, I alleged in the motion to vacate that attorneys Moore and Rodenboe acted as each other's attorneys, and that Moore and Rodenboe both knew that the other did not have standing to bring that motion. I'm sorry, your honors, I believe that Rooker-Feldman did not bar jurisdiction here in this particular case. Counsel, I was trying to remember, was there any state bar action taken against these two lawyers? I don't know if I should say so now, but it's been looked into. Oh, fair enough. Okay, this is as far as I can go. And also, if I can, your honors, I think I may have a bit of time still. You do, you have a minute. Good. This is a very curious case here in that the Mr. Belolo is now on appeal looking for mercy. However, Scorpio, led by Mr. Belolo, approached my husband's former attorneys who represented my husband against Mr. Belolo in the Village People case in the state court. They managed to purchase this particular judgment from my husband, and they purchased the judgment right in the midst of the Scorpio v. Willis case. They took that judgment and started making all types of filings, holding money, saying, hey, you owe us money, you have a judgment here. And then also, your honors, they're in the state court right now seeking a report of a receiver in order to sort of nullify any actions from not only the district court, but the court of appeals to say, look, we're going to take back those copyrights one way or the other. So it's a very, very sordid mess here. So that's why once he moved, once I became the intervener in the case, I sought to have it vacated for fraud in the court. Thank you very much for your argument, counsel. Thank you, your honors. Rebuttal. Yes, your honor. Thank you. I would like to reply to Mr. Kaplan's argument first on the Kurtzahn case and reasonableness. He tends to characterize the standard as whether or not we were unreasonable, and he's arguing about whether or not we had been taking unreasonable positions in the lower court. The question is now, are we not, were we not reasonable as a matter of law, which we were under this Court's holding in Southsall, because the mere fact that we raised issues that had to go to the jury, as you pointed out, statute of the limitations, you know, these were reasonable legal arguments that the jury had to resolve. So under Kurtzahn and Southsall, the reasonableness factor is definitely in our favor. I think that the purposes of the Copyright Act, when you look at overall who prevailed here, which seems to be what Judge Moskowitz ruled, which is that they had prevailed so substantially that he was furthering the purposes of the Copyright Act, it might be for the first $50,000 worth of fees spent on the motions, or $54,000, that you could argue that the purposes of the Copyright Act were furthered by Mr. Willis being able to recapture. I would argue we also furthered the purposes of the Copyright Act because that's the only reported decision now. There were no decisions. That is the only decision that decides what a joint work is when you have three separate grants, how do you recapture. What they argue is three separate grants. We argue it's three separate contracts, one whole grant. The grant's only effective as and when all three authors sign their contracts and convey their rights. Then the publisher has a grant of the copyright. Prior to that, there's no ability to exploit the copyright. Also, to address the questions that were asked to Mr. Jasnok, it's very clear that the second motion he's arguing was untimely. It was made after the trial. There was no due process, as Judge Moskowitz ruled. We had no notice of such a claim. But the same also applies to Mr. Jasnok's motion. He's talking about the motion they made for judgment on the 11 songs. There never was presented in trial the theory of derivative works. These were always treated as joint works. The whole case went to the jury on the theory that they were joint works. So it would be an entirely different trial. The issue of joint works is a factual issue. We would have had to have evidence directed to that. The jury instructions directed to that issue, and as Judge Moskowitz correctly ruled, it was never raised. And to raise it after, in a post-trial motion, or even at the moment that you're about to submit to the jury, makes no sense, and it is untimely. It was not a theory that they pushed or even presented, even in their pretrial order, which governed the course of the trial and their pretrial submissions, as Judge Moskowitz notes. There was never any issue of derivative works. Finally, with regard to what Mrs. Willis just argued, the record is clear that in the state court level there were two attacks on the judgment. Never once did they raise the issue of whether or not the attorneys should have sued as corporations rather than individuals. Actually, on the record of this case, it looks to me like they did the proper thing. The fee agreements were signed by them as individuals. The only mention of the corporation was an attachment or exhibit to the fee agreement, which dealt with the hourly rates of the lawyers. In any event, there is in the record a letter from Mrs. Willis that was written prior to all of those proceedings in state court when she accused those two lawyers of being idiots for proceeding in individual capacities instead of corporate capacity. She also neglected to mention that she later, many years later, filed an action in federal court before Judge Moskowitz attacking these judgments. It was a five or six cause of action complaint that she filed in federal court. Judge Moskowitz ruled that time that the or actually issued an order to show cause as to why there was any jurisdiction. Rather than oppose that, she voluntarily dismissed the complaint, acknowledging that there was no jurisdiction in federal court. There simply was no jurisdiction to consider the issue. Now, one further thing I want to emphasize is that on the attorneys' fees issue, to say that they were the overwhelmingly prevailing party when 80 or 90% of the fees in this case were devoted to the issue of who had what percentage of the composition, whether it be a third or a half. This case primarily involved that issue for almost two years. To say that we're not a prevailing party because we lost motions for summary judgment I do not believe is the standard at all. We had the right to raise issues that we thought were legitimate issues that could have been decided by summary judgment. I'm here today to say that the issue of statute of limitations I still believe should have been the subject of a motion for summary judgment and never should have gone to the jury. I believe that's a very reasonable, rational position given all of the experience Mr. Willis had to learn what he claims he never knew. I don't know how much more you could tell him other than to give him a contract which says this is what you've done, give him all of his statements, put it on record albums, declare at every point that that's in fact what you've done. But to say that somehow that goes to who prevailed on the merits I think is totally incorrect and a misreading of the law. And I do urge that the attorney's fees either be reversed or sent back to the court, as Your Honor suggested, for reconsideration in light of the Kurtzsang and I would believe the Salso opinion, which is important. Thank you very much for your argument, counsel. For the record, my favorite song is Go West, just so that's clear. Your Honor, for the record, we won on Go West. Well, I like that song. And with that, this matter is submitted. I want to thank counsel for your argument today. And thank you, Your Honor. And we are adjourned. All rise.
judges: O'scannlain, Owens, Christensen